IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY D. EXUM, JR., #Y45689,<br><br>    Plaintiff,<br><br>v.<br><br>ROB JEFFREYS,<br>DAVID MITCHELL,<br>PERCY MEYERS,<br>WEXFORD HEALTH SOURCES INC.,<br>and<br>DANIEL L. CONN,<br><br>    Defendants. | Case No. 23-cv-01994-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Jerry Exum, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. This case is before the Court for preliminary review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims and dismiss any portion of a complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who by law is immune. 28 U.S.C. § 1915A.

THE COMPLAINT

  Plaintiff states that around June 9, 2022, while at Pinckneyville Correctional Center (Pinckneyville), he tripped while playing basketball and injured his leg. (Doc. 1, p. 7). The instant he fell, he knew something was wrong because he had serious pain in his leg. Plaintiff was taken to the emergency room, and an x-ray was taken that "showed nothing." The x-ray did not show a

fracture or dislocation. (*Id.* at p. 8, 24). Plaintiff was diagnosed with a knee sprain. (*Id.*). Plaintiff was returned to Pinckneyville. Once back at the facility, Plaintiff was examined and given an ice pack, a knee brace permit, and over the counter pain medications. (*Id.* at 8).

The next day, June 10, 2022, Plaintiff woke in extreme pain. (Doc. 1, p. 8). His leg was swollen and tender to the touch. He asked to see a nurse but was told Dr. Meyers would not see him. For the next few days, he continued to seek medical treatment and filed a grievance but was not seen by medical staff. Plaintiff's family also called the facility asking about his medical care. His family was informed that he had been scheduled for an MRI at an outside facility on June 13, 2022. On June 13, 2022, Plaintiff was not taken for an MRI. (*Id.*). Plaintiff asserts that Dr. Meyers canceled the transportation for the MRI due to costs. (*Id.* at p. 11). Plaintiff instead was seen a nurse practitioner that day. (*Id.* at p. 8). The nurse practitioner examined his knee and prescribed him over-the-counter pain medication. The nurse practitioner told Plaintiff she would submit him for an MRI appointment. (*Id.*).

On June 23, 2022, Plaintiff had an appointment with Dr. Meyers. (Doc. 1, p. 8). Dr. Meyers did not examine Plaintiff and told Plaintiff that the swelling would go down if Plaintiff "stayed off his leg." Dr. Meyers issued Plaintiff a "medical lay-in permit." (*Id.*). Plaintiff states that Dr. Meyers was not qualified to assess him, and he should have been seen by an orthopedic doctor. (*Id.* at p. 12). On June 29, 2022, Plaintiff wrote another grievance complaining of the lack of medical treatment and that the pain in his leg was becoming worse. (*Id.* at p. 8). Plaintiff received a response from Dr. Meyers stating that Plaintiff was scheduled for an MRI at the end of July. (*Id.*).

On July 28, 2022, Dr. Meyers determined that Plaintiff needed knee surgery to repair his patellar tendon. (Doc. 1, p. 8). The next day, Wexford Health Service, Inc. approved for Plaintiff to have the surgery. (*Id.*). Plaintiff received the surgery on August 1, 2022. (*Id.* at p. 9). Following his surgery, Plaintiff continued to complain to medical staff at Pinckneyville that he had pain in

his leg and that "something was still wrong with [his] knee." Plaintiff had an appointment with the Orthopedic Institution of Southern Illinois in December 2022. It was determined that Plaintiff would need a second surgery. Plaintiff's second surgery was on January 19, 2023. Following the second surgery, he was forced to remain in the health care unit unable to participate in activities, receive good conduct credits for working, or earn work wages. Plaintiff asserts that he had to have the second surgery because the first surgery did not correct all of his knee problems and because Dr. Meyers delayed initial treatment. (*Id.*).

### DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Defendants for deliberate indifference to Plaintiff's knee injury.

**Count 2:** Fourteenth Amendment substantive due process claim against Defendants.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

### Count 1

Plaintiff is pursuing his constitutional claims pursuant to Section 1983, which allows suits for damages against state actors in their individual capacities. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v.*

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This includes all claims against Daniel L. Conn, who is named as a defendant in the case caption, but there are no allegations against him in the Complaint. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

*Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).

In order to successfully plead an Eighth Amendment claim for deliberate indifference to a serious medical need, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021). Furthermore, the alleged mishandling of a grievance by an official who did not otherwise participate in the underlying conduct does not state a claim. *Owens v. Hinsley,* 635 F. 3d 950, 953 (7th Cir. 2011).

Here, Plaintiff has not stated a claim against Director Jeffreys or Warden Mitchell for deliberate indifference. Most of Plaintiff's allegations against these two defendants are conclusory and not supported by any factual allegations in the Complaint.[2] There is nothing in the Complaint from which the Court can reasonably infer that they knew of and disregarded an excessive risk to Plaintiff's health. Their involvement in Plaintiff's medical care is limited to their roles within prison administration and because they reviewed and denied his grievances. Neither of which is sufficient for liability. Accordingly, the Eighth Amendment claims against Jeffreys and Mitchell are dismissed without prejudice.

The Court also dismisses Plaintiff's claim against Wexford Health Services, Inc.

---

[2] Plaintiff asserts that Defendants failed to (1) investigate into the allegations of his serious injuries; (2) correct or undue a practice and policy where there are untrained correctional personnel on staff who are not equipped to handle serious medical injuries; and (3) failed to oversee daily operations. (Doc. 1, p. 10-11).

(Wexford). Plaintiff alleges that Wexford promotes a practice and policy of cutting medical care costs for the treatment of non-life-threatening injuries. He states that Wexford chose "the lesser and inexpensive injury to repair, instead of fixing both injuries at once." (Doc. 1, p. 12). Because of this practice, Plaintiff had to have two surgeries on his knee.

This assertion against Wexford is conclusory and not supported by any factual allegations. In the Complaint, Plaintiff alleges that the staff at the orthopedic center decided he needed another surgery "to correct something that should have been corrected in the first surgery. It was also determined that the second surgery was needed because the medical director Dr. Meyers didn't take this medical issue serious[ly] from the start and the kneecap was starting to heal." (Doc. 1, p. 9). It is not clear how the determination by staff at an outside facility to operate a second time to correct "defects of the first surgery," also performed by outside medical staff, supports a claim of deliberate indifference against Wexford. Additionally, according to Complaint and attached exhibits, it was Dr. Meyers who determined that Plaintiff needed surgical repair to his patellar tendon and recommended the first surgery. (*Id.* at p. 8, 34). Wexford cannot be held vicariously liable for the conduct of its employees, and again, there is nothing in the pleadings from which the Court can infer that Dr. Meyers made the decision pursuant to a Wexford policy or practice. Accordingly, the claim against Wexford is dismissed without prejudice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (U.S. 2009) ("naked assertions devoid of further factual enhancement" are not sufficient to state a claim).

Plaintiff will be allowed to proceed on an Eighth Amendment claim against Dr. Meyers for denying and/or delaying constitutionally adequate care for his knee injury.

### COUNT 2

In addition to asserting his claims under the Eighth Amendment, Plaintiff states that he is bringing his claims for inadequate medical care pursuant to the due process clause of the

Fourteenth Amendment. This claim is dismissed. When a "particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273 (1994). Here, the Eighth Amendment provides an explicit source of constitutional protection and therefore displaces Plaintiff's substantive due process claim. *See Childress v. Walker*, 787 F.3d 433, 438 (7th Cir. 2015). Count 2 is dismissed with prejudice against the defendants.

## DISPOSITION

For the reasons states above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Dr. Meyers but is **DISMISSED without prejudice** as to Jeffreys, Mitchell, and Wexford. **COUNT 2** is **DISMISSED with prejudice**. Because there are no surviving claims against Jeffreys, Mitchell, Meyers, and Conn, they are dismissed from this case. The Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

Because Plaintiff's claims involve allegations regarding his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Meyers the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the

extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant only needs to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   January 26, 2024**

                                          *s/Stephen P. McGlynn*
                                          **STEPHEN P. MCGLYNN**
                                          **United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.